# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **CLARENCE MOSES** | * | **CIVIL ACTION NO.  10-0522**<br>**Section P** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **LARRY COX, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. # 20] filed by defendants, Madison Parish Sheriff Larry Cox and Wanda Nolan.  For reasons assigned below, it is recommended that the motion be **GRANTED**.

## Procedural History

On March 23, 2010, Clarence Moses, an inmate in the custody of Louisiana's Department of Public Safety and Corrections, filed the instant, pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against Madison Parish Sheriff Larry G. Cox and Nurse Wanda Nolan, a nurse at the Madison Parish Correctional Center ("MPCC").  Moses contends that he did not receive constitutionally adequate medical care while confined at the MPCC, and that the named defendants were deliberately indifferent to his serious medical needs.  In his amended complaint, plaintiff asserted an additional claim for intentional infliction of emotional distress.  He requested an award of $25 million for his permanent deafness, $150,000 for his pain and suffering, and another $250,000 in compensatory and punitive damages against Larry Cox.  He

further requested classes in sign language because of his permanent hearing loss.

On June 30, 2010, the undersigned determined that plaintiff sufficiently pleaded a cause of action, and ordered service on defendants.  (June 30, 2010, Mem. Order [doc. # 6]).  On September 21, 2010, the court appointed counsel to represent plaintiff.  (Sept. 21, 2010, Order [doc. # 13]).  Defendants answered plaintiff's complaint, as amended, on December 17, 2010. [doc. # 19].  Following a period for discovery, defendants filed the instant motion for summary judgment on March 16, 2010.  Plaintiff filed his opposition memorandum on June 10, 2011.[1] Defendants filed their reply memorandum on June 20, 2011.  The matter is now before the court.

### Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing

---

[1]  In his opposition memorandum, plaintiff indicated that he was still awaiting receipt of outside medical records.   (Opp. Memo., pg. 5).  Some three months later, however, plaintiff has not sought to supplement his response with these records.  Moreover, if plaintiff harbored credible concerns concerning the prematurity of the instant motion for summary judgment, his remedy was to submit an affidavit or declaration setting forth reasons why he could not adduce facts to oppose the motion for summary judgment.  Fed.R.Civ.P. 56(d).  Plaintiff did not comply with Rule 56(d); thus summary judgment may be entered if otherwise appropriate.  *See McCreless v. Moore Business Forms Inc.*, 1997 WL 157005 (5th Cir. Mar. 26, 1997) (unpubl.) (citation omitted).

the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the record." Fed.R.Civ.P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond

peradventure[2] all of the essential elements of the claim . . . to warrant judgment in [its] favor."
*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must
affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*,
1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

<u>Analysis</u>

I.   **Inadequate Medical Care**

a)      <u>Law</u>

As a convicted inmate, plaintiff's claim for inadequate medical care is analyzed under the
Eighth Amendment's prohibition against cruel and unusual punishment.  To establish liability, an
inmate must adduce facts which "clearly evince" a serious medical need and the prison official's
deliberate indifference to it.  *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation
omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical
care to a prisoner means that:  (1) the official was aware of facts from which an inference of
substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and
(3) the official's response indicates that the official subjectively intended that harm occur.
*Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001).   "[T]he failure to
alleviate a significant risk that [the official] should have perceived, but did not is insufficient to
show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752,
756 (5th Cir. 2001).  Moreover, "deliberate indifference cannot be inferred merely from a
negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*,

---

[2]  I.e., beyond doubt.

4

245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  "[A] delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm." *Gregory v. McKennon*, 2011 WL 2473714 (5th Cir. June 22, 2011) (unpubl.) (citation and internal quotation marks omitted).

  b) <u>Facts</u>

   In support of their motion for summary judgment, defendants submitted a certified copy of plaintiff's medical records.  *See* Affidavit of Wanda Nolan, and attach. records [doc. # 24]. From these records, movants compiled a chronological summary of plaintiff's medical treatment, which they incorporated into their Statement of Uncontested Material Facts.  Plaintiff does not specifically controvert the facts set forth in defendants' Statement.  *See* Pl. Statement [doc. # 29]. Rather, he emphasizes additional treatment dates in the medical record that defendants omitted from their summary.  *See* Pl. Statement [doc. # 49].[3]  Accordingly, the court's recitation of the medical chronology tracks the uncontroverted portions of defendants' Statement of Uncontested Material Facts, as supplemented by plaintiff's Statement, and the court's own independent review of the medical records.  *See* Fed.R.Civ.P. 56(e)(2) and LR 56.2 (material facts in the moving party's statement are deemed admitted unless controverted by non-movant's statement).

---

  [3]  For instance, defendants' summary of the medical record conspicuously omits all references to plaintiff's seizure disorder.

| **Date** | **Description of Appointment and/or Treatment** | **Record Page No.[4]** |
|---|---|---|
| June 28, 2008 | Moses processed into MPCC | |
| July 1, 2008 | Moses' initial complaint about his ear.  Prison physician, Dr. T. A. Newman, was notified and cortisporan drops were administered pursuant to the physician order. | |
| July 15, 2008 | Plaintiff reports not using the eardrops correctly. Dr. Newman notified and plaintiff treated with Duricef, 500 mg for 10 days. | |
| July 24, 2008 | Plaintiff transported to appointment with Dr. T. A. Newman. The doctor ordered treatment with cortisporan OTC drops. | |
| Sept. 5, 2008 | Moses complained about a rash and that his ear was bleeding. Nurse Nolan responded that she would call the prison doctor and schedule an appt. with LSU for further treatment. | Doc. # 24-4, pg. 20. |
| Sept. 9, 2008 | Plaintiff complained of pain and drainage from the ears. | |
| Sept. 10, 2008 | Plaintiff sent to LSU for medical sick call. The doctor stated "chronic ear damage - post surgery, greater than 10 years." No prescription related to ear drainage was given | |

---

[4]  The citations to the record reflect the court's independent review.

| Oct. 13, 2008 | Moses was found unresponsive, with Nurse Nolan unable to obtain a blood pressure.  Nurse Smith, a registered nurse, ordered Moses's immediate transportation to Madison Parish Hospital.  The emergency room physician, Lawrence Chenier, III, M.D., diagnosed syncope.  He instructed Moses to schedule an appointment with his primary care physician.  Moses returned to MPCC several hours later.  Nurse Smith called the emergency room physician to discuss the incident.  A CT scan of Moses's head performed later that day, was within normal limits. | Doc. # 24-5, pg. 1. Doc. # 24-1, pg. 7. |
|---|---|---|
| Oct. 17, 2008 | Plaintiff was seen by LSU Shreveport ENT Clinic.  Plaintiff reported chronic left ear pain.  Treatment notes indicate that Moses "perforated the left ear drum in 1995, drainage started 3-4 years ago per inmate." He was was treated with amoxicillin 500 mg and Floxin OTC.  (No reference to his syncope four days earlier). | Doc. # 24-3, pg. 4. |
| Oct. 31, 2008 | Visit to LSU ENT Clinic in Shreveport.  No changes noted. | Doc. # 24-4, pgs. 2-4. |
| Nov. 17, 2008 | Treatment record for follow-up for a mandible fracture.[5] | Doc. # 24-4, pg. 1. |
| Nov. 21, 2008 | Plaintiff brought to the LSU ENT Clinic and treated with Ciprodex OTC 4 drops for each ear x 7 days and Flonase. | |
| Jan. 23, 2009 | Plaintiff brought to LSU ENT Clinic appointment.  Moses complained of a headache for the past seven months, without relief.  LSU treated him with Floxin OTC drops, Augmentin 800 mg and ibuprofen for his headache. | Doc. # 24-3, pg. 31. |

---

[5]  There is nothing in the record to indicate that Moses suffered a mandible fracture.  This page is the sole reference to a mandible fracture, but it does not contain the patient's name.  It is likely that this record is from another patient's chart because it notes that the "inmate" was 39 years old, whereas, at that time, Moses was approximately 58 years old.

| March 9, 2009 | Notes from visit to LSU clinic indicate that Moses suffered left typanic membrane perforation ten years earlier, with an attempt to repair it in 1997. Nonetheless, it continued to drain.  He also complained of right otorrhea blood/purulence for the past two years. | Doc. # 24-3, pgs. 29-30. |
|---|---|---|
| March 27, 2009 | Plaintiff brought to LSU ENT Clinic appointment. No prescription was given and a pre-operative appointment was set per LSU for June 5, 2009 | Doc. # 24-3, pgs. 27-28. |
| June 5, 2009 | Plaintiff transported  to the LSU ENT Clinic. Preoperative labs were ordered but the doctor stated they needed cardiac clearance before surgery. Moses's surgery date was moved because Dr. Harstad was out.  Moses also exhibited intermittent chest pain.  Moses claimed chronic otorrhea for many years.  Surgery was to be re-scheduled after his chest pain was worked up. | Doc. # 24-3, pgs. 25-26. |
| June 24, 2009 | Moses requested ointment for a rash and tylenol for his ears.  Pg. 16.  Nurse Nolan replied that she would "provide Tylenol & AFC per I/M request with instructions for use . . ." | Doc. # 24-4, pg. 16. |
| Aug. 1, 2009 | Nurse Nolan noted that Moses had suffered a seizure.   She indicated that she would schedule a medical clinic appt. for further evaluation.  She further stated that Moses understood and agreed with the plan of care. | Doc. # 24-4, pg. 25. |
| Aug. 10, 2009 | Plaintiff transported to LSU General Medicine Clinic appointment. He was treated for pre-operative and clearance orders were given.  He described his ear pain as a 4/10.  He had no significant past medical history.  His complaints of chest pain were worked up.  He was diagnosed with heartburn.  A stress test was scheduled for August 20, 2009.  (No mention of his seizure activity). | Doc. # 24-3, pgs. 22-23. |
| Aug. 21, 2009 | Plaintiff brought to LSU General Medicine Clinic appointment.  He was scheduled for surgery on Nov. 11, 2009.  (Again, no indication of neurological problems). | Doc. # 24-3, pgs. 19-20. |

8

| | | |
|---|---|---|
| Sept. 14, 2009 | Plaintiff brought to LSU General Medicine Clinic appointment. Moses reported that he felt good today, with zero pain.  He was given a prescription for hydrochlorothiazide 25 mg. | Doc. # 24-3, pg. 15. |
| Nov. 10, 2009 | Nurse's notes reflect that doctor from LSU called to cancel Moses's appointment.  LSU would call to re-schedule. | Doc. # 24-4, pg. 19. |
| Dec. 4, 2009 | Moses completed Inmate Request Forms for constipation and hemorrhoids.  Nurse Nolan replied that she would provide hemorrhoidal ointment and an over-the-counter stool softener. | Doc. # 24-4, pgs. 13-14. |
| Dec. 15, 2009 | Moses seen at the LSU Ambulatory Care Division.  He reported generalized, constant pain that was 10/10 since May 2008.  Notes reflect that he was to see neurology for seizures. | Doc. # 24-2, pg. 36. |
| Feb. 21, 2010 | Moses filled out an Inmate Request Form for a bad tooth with associated pain.  Nurse Nolan indicated that she would schedule a dental appointment to extract it. | Doc. # 24-4, pg. 12. |
| March 12, 2010 | Moses's surgery was scheduled for April 14, 2010.  Notes reflect that the surgery was scheduled for last year, but the date was missed. | Doc. # 24-2, pgs 32-34. |
| March 25, 2010 | A dentist in Marksville extracted Moses's tooth. | Doc. # 24-2, pg. 31. |
| April 5, 2010 | Moses asked to see a doctor about his seizures.  He further indicated that he had suffered five seizures since he arrived at MPCC.  Nurse Nolan indicated that she would schedule an appointment with the doctor. | Doc. # 24-4, pg. 11. |
| April 9, 2010 | Plaintiff was brought to LSU appointment. He still had otorrhea, so his surgery was continued.  He was told to return in one month to re-schedule the operation He was treated with Ciprodex drops in both ears.  (No mention of his seizures). | Doc. # 24-2, pgs. 28-29. |

9

| May 21, 2010 | Plaintiff brought to LSU ENT Clinic. He still complained of bilateral otorrhea.  He was given a prescription for Loratadine. A pre-op appointment was scheduled for July 30.  Surgery was scheduled for August 6.  (Again, no complaints of seizures). | Doc. # 24-2, pgs. 26-27. |
| --- | --- | --- |
| July 14, 2010 | Plaintiff brought to LSU for preoperative appointment. | |
| July 20, 2010 | Plaintiff underwent surgery on his left ear. He received a prescription given for Clindamycin 300 mg; Lortab and Tramadol. | Doc. # 24-2, pgs. 21-22. |
| July 21-26, 2010 | Nurse Nolan provided wound care to Moses following his ear surgery. | Doc. 24-4, pgs. 24-25. |
| July 30, 2010 | Plaintiff returned to LSU for follow-up after surgery. Notes reflect that "patient doing well and hearing somewhat improved."  Although Moses had some pain over the incision site, he had no additional complaints. | Doc. # 24-2, pg. 18. |
| Aug. 2, 2010 | Moses requested refill of his pain medication. Nurse Nolan notified the prison doctor and received new orders. | Doc. # 24-4, pgs. 10. |
| Aug. 20, 2010 | Moses seen at the LSU ENT Clinic for follow-up. Moses reported that he was not hearing any better since the surgery.  He received a prescription for Floxin. | Doc. # 24-2, pgs. 14-15. |
| Sept. 10, 2010 | Plaintiff seen at LSU ENT Clinic.  Audio testing reflected moderate to profound hearing loss, bilaterally.  However, the physician noted "audio inconsistent, possible malingering." | Doc. # 24-2, pgs. 10-12. |
| Sept. 17, 2010 | LSU ENT Clinic Appointment.  Plaintiff did not verbalize any pain.  His chief complaint/diagnosis was ottorhea. He was to follow-up in two to three months with audio testings.  He was prescribed floxin drops and hydrochlorothiazide. | Doc. # 24-2, pgs. 6-8. |

| Sept. 24, 2010 | Plaintiff seen at LSU with complaints of seizures. Notes reflect that he had a history of four seizures in the past from November 2009-February 2010. However, he has experienced none since then.  He was diagnosed with seizures and scheduled for an MRI on Nov. 15 and neurology on January 28, 2011. The physician speculated that it could have been encephalitis secondary to otitis.  He was held off of anti-epileptic drugs for the time being. | Doc. # 24-2, pgs. 3-4. |
|---|---|---|
| Oct. 6, 2010 | Moses was taken to E.A. Conway emergency room following a seizure the night before.  He reported having seizures approximately every 4-5 months for the past three years.  He was prescribed Dilantin. | Doc. # 24-2, pg. 2. |
| Oct. 8, 2010 | Moses left E.A. Conway Hospital against medical advice because he said that "everything [was] all right." | Doc. # 24-1, pgs. 34-35. |
| Dec. 17, 2010 | Moses was seen at LSU ENT.  He was interested in hearing aids, but again found to be malingering on audio tests. | Doc. # 24-1, pgs. 31-33. |
| Jan. 21, 2011 | Plaintiff brought to LSU Clinic appointment for pre-op.  Surgery on left ear scheduled for February 1, 2011.  Prescription provided for Floxin and Flonase. | Doc. # 24-1, pgs. 26-30. |
| Jan. 28, 2011 | Moses was seen at LSU on January 28, 2011, for follow-up for his seizures.  His pain was 0/10. Notes indicated that Moses had not suffered any seizures since receiving seizure medication three months earlier.  An MRI showed a venous anomaly. His EEG was normal.  He was to continue his seizure meds. | Doc. # 24-1, pgs. 19-20. |
| Feb. 1, 2011 | LSU re-scheduled Moses's appointment for March 4, 2011. | |
| March 4, 2011 | Plaintiff brought to LSU ENT Clinic for pre-op, and consent was signed for left ear surgery. Appointment was set for March 15, 2011. | Doc. # 24-1, pgs. 14-18. |

| March 15, 2011 | Surgery performed. Prescription provided for Amoxyl and Lortab. | |

The foregoing chronology of plaintiff's medical records confirms that from September 2008 through March 2011 – a roughly 31 month period – the MPCC transported plaintiff to over 27 appointments at the LSU hospitals in Shreveport and Monroe.  These appointments addressed not only plaintiff's ear problems, but also his seizure disorder.  The court sympathizes with plaintiff regarding the length of time that it took to undergo surgeries on his ear.  However, the uncontroverted record confirms that the MPCC initially tried to treat his condition in-house with medication.  When that failed, they regularly brought plaintiff to see physician(s) at LSU.  While plaintiff alleges in his amended complaint that Nurse Nolan was responsible for the delays associated with his surgeries, there is no competent summary judgment evidence to support these allegations.  To the contrary, the delays appear solely attributable to LSU.  Moreover, the record indicates that plaintiff had been experiencing these chronic ear problems since at least 1997. There is no evidence that the surgery postponements exacerbated this longstanding condition or caused any additional hearing loss.  The court notes that at one medical appointment, plaintiff reported that he had been in constant, unremitting pain since May 2008.  On other occasions, however, he told medical personnel that he had no pain at all.  The uncontroverted medical record from LSU further indicates that, on more than occasion, plaintiff demonstrated a propensity to malinger and to inflate the severity of his hearing loss.

With regard to plaintiff's seizure activity, the court notes that the condition appears to have gone untreated for some time.  Again, however, there is no evidence that this was the fault of defendants.  Plaintiff's first documented seizure or syncope was in October 2008.  At that

12

time, MPCC staff immediately transported him to the nearest hospital emergency room, where he was released with instructions to follow-up with his primary care physician.  Plaintiff was seen at the LSU ENT Clinic a few days later, but there was no mention of any seizures.  Moreover, even during plaintiff's initial pre-op screening in June 2009, there was no mention of a seizure disorder.[6]  Again when plaintiff suffered another seizure in early August 2009, there was no mention of it during his pre-op screening on August 10, 2009.  LSU notes from December 15, 2009, indicate that plaintiff was to see neurology.  However, it does not appear that LSU placed plaintiff on seizure medication until October 2010, following yet another attack.[7]

The court does not question that Moses has cause to be dissatisfied with the pace of his treatment at LSU.  On the existing record, however, it is manifest that Nurse Nolan and Sheriff Cox were not deliberately indifferent to his serious medical needs.  Indeed, continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992).  Further, even if plaintiff were able to establish that Nolan and/or Cox somehow contributed to the delays in his treatment, he has not adduced any evidence to establish that their actions or inaction materially exacerbated his condition or caused him harm.  *See Gregory, supra* (no deliberate indifference where pharmacy staff responded to inmate's medical needs in some way, and no proof of resulting harm from their actions); *Harris v. Walley*, 2011 WL 3501824 (5th Cir. Aug. 10, 2011) (unpubl.) (no deliberate indifference for one year delay in dental surgery

_____

[6]  LSU, however, did order a work-up for plaintiff's chest pain.

[7]  Less than two weeks earlier, an LSU physician had speculated that Moses's seizures were caused by encephalitis secondary to otitis, thus deciding to defer the use of anti-epileptic drugs.

where defendants made efforts to treat and monitor dental problems and no proof of permanent resulting injury); *Barrett v. Mississippi Dept. of Corrections*, 2011 WL 2183431 (5th Cir. June 3, 2011) (unpubl.) (inmate's argument that medical staff did not use the most efficacious method of treatment, e.g., performing surgery earlier, does not establish a claim of deliberate indifference) (citation omitted).

In response to defendants' motion, plaintiff has not adduced any evidence that a defendant herein actually inferred a substantial risk of harm stemming from plaintiff's alleged inadequate medical treatment, or that a defendant subjectively intended him to suffer harm. Rather, the evidence uniformly confirms that defendants diligently strived to provide plaintiff with requisite medical care. The fact that plaintiff does not believe that his medical treatment was as swift or comprehensive as it could have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not entitled to the "best medical care money can buy." *See Mayweather, supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981).

## II.    Government Entity and Supervisory Liability

To the extent that plaintiff intended to sue Sheriff Cox in his official capacity, the court observes that official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)). To impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S.

14

658, 690-691, 98 S.Ct. 2018, 2036 (1978)).  "In a Section 1983 case, the burden of proving the

existence of an unconstitutional municipal policy or established custom rests upon the plaintiff."

*McConney v. City of Houston*,  863 F.2d 1180, 1184 (5th Cir. 1989).

In the case *sub judice*, plaintiff has not established an underlying constitutional violation

by Nolan or Cox in their individual capacities.  *A fortiori*, he has not identified a precipitating

unconstitutional custom or policy enacted by the government entity.  *See Bustos v. Martini Club

Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (because the officers did not violate plaintiff's

constitutional rights, neither did the city).[8]

Insofar as plaintiff seeks to hold Cox liable in his supervisory capacity, the court observes

that supervisors can be held liable when the "enforcement of a policy or practice results in a

deprivation of federally protected rights."  *Bustos, supra* (citation omitted).  Again, however,

because plaintiff has failed to allege or establish a constitutional violation by the individuals

directly involved in the challenged activity, he cannot show that any supervisor implemented a

policy or custom that violated his constitutional rights.  *Bustos*, 599 F.3d at 468.

## III.    State Law Claims

To the extent that plaintiff's complaint, as amended, sets forth additional claims arising

under state law (e.g., a tort claim for intentional infliction of emotional distress), when, as

recommended here, all constitutional claims which conferred federal subject matter jurisdiction

---

[8]  Plaintiff also questions the MPCC's practice of using a licensed practical nurse to
screen and treat inmate healthcare issues.  Under state law, however, licensed practical nurses are
permitted to administer medication and treatment, plus "additional specified acts . . . when
directed to do so by the licensed physician.  La. R.S. 37:961.  Here, the record confirms that
Nurse Nolan dutifully consulted the prison physician and followed his instructions.  Moreover,
there is no evidence that the MPCC's use of licensed practical nurses caused plaintiff to suffer
any constitutionally cognizable injury, in this case.  *See* discussion, *supra*.

are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining

state law claims.  28 U.S.C. § 1367.[9]  In fact, this is the general rule.  *Priester v. Lowndes*

*County*,  354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  The twin interests of comity and

efficiency dictate that any remaining state law claims be dismissed without prejudice.  28 U.S.C.

§ 1367(c).[10]

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 20] filed by

defendants, Madison Parish Sheriff Larry Cox and Wanda Nolan, be **GRANTED**, and that

judgment be entered in favor of said defendants, dismissing with prejudice plaintiff's claims

arising under the Constitution and laws of the United States.  Fed. R. Civ. P. 56.

**IT IS FURTHER RECOMMENDED** that any remaining state law claims be

DISMISSED, without prejudice.  28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of

filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

---

[9]   In the case *sub judice*, there is no indication that the court may exercise diversity
jurisdiction, 28 U.S.C. § 1332.

[10]   The limitations period is tolled for a minimum of 30 days after dismissal.  *See* 28
U.S.C. § 1367(d).

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 19th day of September, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE